Frank P. De Luca, J.
Petitioner has been employed at the State University of New York at Stony Brook and holds the civil service title of senior financial secretary, which title he assumed in December, 1965. He has been in the civil service of the State of New York since 1959 and began working at the State University in 1962. On or about November 22, 1972, petitioner was served with written charges pursuant to section 75 of. the Civil Service Law and in accordance with subsection 3 thereof, he was suspended without pay for a period of 30 days. The charges and specifications run to 76 pages, 43 charges and include a charge of misappropriation of State funds for petitioner’s personal use. The period of time covered by the charges runs from 1967 until August 31, 1970. Since then, petitioner has been employed in a different capaes *452 ity and is no longer involved with direct financial and other matters pertinent to the charges and specifications lodged against him.
Petitioner categorically denies all of the charges and seeks reinstatement to his position. He alleges that his suspension deprives him of property in the nature of salary (approximately $1,500 per month) without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States in that he Was granted no hearing prior to said suspension.
The Attorney-General has interposed an answer containing a denial of personal service as required by ÚPLR 2214 (subd. [d]). The petition was originally dismissed for failure to-serve the Attorney-General as required by the statute. However, in this instance, petitioner effected personal service upon an Assistant Attorney-General at his office in Babylon and also served the Attorney-General by certified mail upon the New York City office. "While the point is debatable, the court believes that the statute has been complied with so that jurisdictional defects, if any, have been cured.
The central issue for determination herein concerns the constitutionality of subdivision 3 of section 75 of the Civil Service Law in the light of recent decisions by the United States Supreme Court. That statute provides for a suspension without pay for a period up to 30 days pending determination of charges of misconduct or incompetency filed against a civil service employee. If the employee is eventually acquitted, he shall be restored to his position with full pay for the suspension period.
Petitioner relies primarily upon Fuentes v. Shevin, decided by the United States Supreme Court on June 12, 1972 (407 U. S. 67). The Fuentes decision invalidated Florida and Pennsylvania statutes which permitted a secured creditor to seize the secured property without notice to the debtor upon default in payment. In so doing, the Supreme Court reaffirmed the right to a hearing before an individual is deprived of any significant property right'^except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. (Boddie v. Connecticut, 401 U. S. 371, 378, cited in Fuentes at p. 82.)
It appears to this court that the -Supreme Court has answered the rationale of section 75, i.e.— that the suspension is temporary and if 'the employee is vindicated, his lost salary will be restored — by stating: “ But po later hearing and np coinage *453 award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. ‘ This Court has not * * * embraced the general proposition that a wrong may be done if it can be undone.’ ” (407 U. S. 67, 82.)
The court went on to say even “ a temporary, nonfinal deprivation of property is nonetheless a ‘ deprivation ’ in the terms of the Fourteenth Amendment.” (p. 85.)
Therefore, this court reads the Fuentes decision as requiring a hearing prior to even a temporary suspension of a public employee, unless some “valid governmental interest” overrides the employee’s Fourteenth Amendment rights. Is this “governmental interest” present in the case at bar?
The respondent answers that the general public interest involved here justifies the suspension procedures because of the quasi-criminal nature of the charges lodged against petitioner. He cites Cafeteria Workers v. McElroy (367 U. S. 886) as an instance where the Supreme Court held that governmental considerations may take precedence over individual rights and affirmed the dismissal of a Federal employee without a hearing. The plaintiff in the McElroy case was a shórt-order cook working at a naval base who was denied security clearance and thus barrad from entering the base by order of the naval commander.
However, the author of Fuentes v. Shevin (407 U. S. 67, supra), Mr. Justice Stewart, distinguishes the McElroy case as an instance where the national security outweighed the right to a prior hearing. (See 407 U. S. 67, 91, n. 23.) He pointed qut that it was the rare situation where opportunity for a prior hearing would be denied, such as in collecting the internal revenue of the United States, meeting the needs of -the war effort, protecting the public from contaminated foods. (See pp. 90-92.)
In the case at bar, the court is cognizant of the importance and character of the charges brought against petitioner. It recognizes that there is an important public interest involved in- protecting the public funds. But can it be said that summary action is necessary in this case where the petitioner is no longer in the sensitive area relevant to the charges and where more than two years elapsed from the last incident stated in the charges until said charges were actually lodged?
The recent case of Matter of Sanford v. Rockefeller (40 A D 2d 82) illustrates the type of valid, governmental interest that would justify a postponement of the due process rights under consideration here. The Appellate Division recognized the *454 relevancy of the Fuentes decision but held that the penalties. provided by the Taylor Law (Civil -Service Law, art. 14) prior to a hearing were vital to prevent strikes by public employees. Such preventión of strikes against the State interest was deemed to constitute a “ valid governmental interest ” justifying temporarily subordinating individual due process rights.
In summary, the court believes that the case at bar does not present an extraordinary situation where a specific valid governmental interest would justify a suspension and loss of pay prior to a hearing. Even if the petitioner had not already been removed to an isolated area when the first suspicion of wrongdoing arose, it certainly was within the capability of respondent to assign petitioner elsewhere while taking prompt action towards conducting a hearing. In short, this is not a situation where the public employer was powerless to take corrective action without having to violate the presumption of innocence and basic due process rights guaranteed by the Constitution to q,ll citizens, not excepting public employees.
Accordingly, the petitioner’s suspension is vacated and he is directed to be reinstated to the position he held at the time of his suspension, forthwith. At the oral argument, respondent conceded that petitioner’s demands for a bill of particulars and for an independent hearing officer would be granted. Therefore, the court presumes that this relief will be forthcoming at least 10 days prior to the administrative hearing,