Joseph F. Hawkins, J.
The proceeding herein has been instituted by order to show cause seeking an order to restore the petitioner to his position as a correction officer and further ordering that he be given his back pay for the period of his suspension.
Upon the petition, the supporting affidavit and the exhibits attached thereto, it appears that the petitioner was employed as a “ Commissary Officer ” at Matteawan State Hospital for a period of some 12 years which particular function ended in October, 1973. Petitioner has been employed as a correction officer at both the Matteawan State Hospital and Fishkill Correctional Facility for a total of some 22 years.
By a notice, captioned “ Memorandum ”, the superintendent of the Fishkill Correctional Facility, citing section 4 of article 8 of the collective bargaining agreement between the State of New York and the Security Unit Employees Council 82, AFSME (Association of Federal, State and Municipal Employees), AFL-CIO, informed the petitioner that “ you are hereby suspended from duty, without pay, immediately. ” He was further directed to return his badge, identification card, etc., and was also informed that by virtue of such action his status as a peace officer was concomitantly suspended and, hence, his authority to possess and carry firearms was revoked. The notice concluded by ordering him to report to the superintendent some four days hence to receive a notice of discipline which would then provide “ the reasons for discipline and the proposed penalty.”
Thereafter followed a notification entitled, “ Notice of Discipline ”, signed by the respondent, John W. Burns, Director, Bureau of Labor Relations, wherein he cites the same article of the collective bargaining agreement. That notice contains three “ reasons for this discipline ”, which are stated to be: (1) sale of merchandise to inmates in prices in excess of the *95 authorized prices; (2) permitting inmates to buy merchandise in excess of so-called “ buy limit ”; and (3) false entries of the sale of such merchandise. There is also a subparagraph charging petitioner with improper supervision of clerks and correction officers assigned to the commissary.
The petitioner’s affidavit is rather lengthly containing a purported record of his exemplary service both prior and subsequent to the alleged acts of misconduct, including a commendation for acts performed in his new function as a prison guard. Petitioner further stresses that as a consequence of being suspended without pay he has been placed in an impossible pecuniary position and that his many years of good and faithful service have been ignored.
In opposition, the Attorney-General is content to submit a rather curt affidavit confined to informing the court of the existence of the doctrine of exhaustion of remedies, citing one authority (Matter of Amigone v. State Liq. Auth., 47 Misc 2d 809). The latter citation is most readily disposed of as quite inapplicable to the matter at bar for Amigone relates to a trial procedural matter involving the propriety of a request for a subpoena duces tecum. Significantly, there is nothing in that opinion to indicate that the respondent’s license had been suspended pending the hearing.
The petition appears to be largely founded upon the alleged insufficiency of the notice in that it contravenes article 8 for the notice of discipline fails to contain the requisite “ detailed description of the alleged acts and conduct including references to dates, times and places.” Clearly, the said notice does not comply with such requirements. Reference to section 8.4 of the collective bargaining agreement reveals that the notice of discipline, prima facie, comes within neither subdivision 1 nor 2. The former requires a determination not only that there is “ probable cause ” but that “ such employee’s continued presence on the job represents a potential danger to persons or property.” As for subdivision 2, it is obviously inapplicable since there is no suggestion whatever of any “ criminal charge.”
It appears to me that the learned opinion of Mr. Justice De Luca in Matter of Randall v. Toll (73 Misc 2d 451) is particularly, apposite to the controversy at bar. Matter of Randall contains a comprehensive review of the extant United States Supreme Court decisions on this point and the language therein cited from Fuentes v. Shevin (407 U. S. 67) although concerned with the rights of a creditor rather than a civil service public employee situation, bears repetition: “ In so doing, the Supreme *96 Court reaffirmed the right to a hearing before an individual is deprived of any significant property right except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' (Boddie v. Connecticut, 401 U. S. 371, 378, cited in Fuentes at p. 82.) ” (Matter of Randall v. Toll, supra, p. 452.)
Speaking directly of the very issue in Randall involving the suspension of a civil service employee for 30 days without pay, the holding in Randall is particularly pertinent in view of the change of function and duties assigned to the petitioner at bar, for a substantial period prior to the suspension. “ In the ease at bar, the court is cognizant of the importance and character of the charges brought against petitioner. It recognizes that there is an important public interest involved in protecting the public funds. But can it be said that summary action is necessary in this case where the petitioner is no longer in the sensitive area relevant to the charges and where more than two years elapsed from the last incident stated in the charges until said charges were actually lodged? ” (Matter of Randall, supra, p. 453.)
The Attorney-General stresses the defense of exhaustion of remedies. In view of the nature of petitioner’s employment and his economic status to insist upon the most rigid interpretation of that doctrine — assuming it is here applicable — is to require that the petitioner not only exhaust his remedies but to exhaust himself in the pursuit of elementary due process. In sum, by economic pressures, the exhausted petitioner may well be rendered remediless.
Whether or not the petitioner has a constitutional right to continued employment in the public service, arbitrarily, he is being denied the most fundamental of all property rights — the right to earn his daily bread and to support his family. The judicial predicate for the administrative proceeding is here lacking for not only does the notice of discipline appear to contravene the very terms and conditions of the collective bargaining agreement, it offends fundamental judicial sensibilities of minimal due process.
Under the circumstances, the petitioner’s application is granted to the extent of vacating the notice of suspension and ordering that he be paid his back pay ” within 10 days from service of a copy of the order to be entered hereon with notice of entry. To do less is to deny petitioner his right to have his status restored to the condition obtaining prior to the putative suspension. The respondents, of course, are not required to *97 restore petitioner to his former position as a commissary officer but may reassign him to the position as a guard or to any other appropriate duties. I expressly rule, however, that he is to be continued on the payroll irrespective of whether or not he is assigned to duty. Respecting the rights of the agency of the State involved, it can, of course, proceed expeditiously in accordance with the collective bargaining agreement and/or the Civil Service Law of the State of New York with the further caveat that due process is a matter of constitutional right and not a matter of grace to be conferred by a benign or malevolent State.