Joseph F. Hawkins, J.
The respondents move for reargumént and the petitioner cross-moves to resettle the order previously entered herein! The order had stricken therefrom by me a proposed decretal paragraph canceling and vacating the notice of discipline without prejudice to the issuance of a new notice in accordance with the collective bargaining agreement. (Merante v. Burns, 79 Misc 2d 93.)
The respondents, in support of the application, state that 4 4 due to the inadvertence of counsel, for which your deponent apologizes to this court,” the court’s attention was not drawn to *67 recent decision in the United States Supreme Court, Arnett v. Kennedy (416 U. S. 134), which it is urged, disposes of the issue at bar. Respondents also cite Matter of Wilson (N. Y. L. J., Oct. 1, 1974, p. 17, col. 7).
Parenthetically, before considering the merits of the application to reargue, I note that, in part, the motions result from respondents’ failure to submit a proposed counterorder, further compounded by the petitioner’s proposed order containing decretal matter which I deemed not within the purview of my opinion.
In my original opinion (Merante v. Burns, supra), I considered what I deemed to be the salient issues. It was rendered on September 11, 1974, Arnett was decided on April 16, 1974. Significantly, although Arnett was argued on November 7, 1973, the United States Supreme Court did not render its decision until some five months later.
In discussing Arnett, it should be noted — and perhaps this explains the protracted interval between argument and decision— that the majority opinion rendered on behalf of the court by Justice - Rehnquist was joined in by only two other Justices, to wit: Chief Justice Burger and Justice Stewart. Justices Powell and Blackmun, concurring in the holding that the Lloyd-LaFollette Act is constitutional, did so since the employee could not be terminated without notice and a full evidentiary hearing. Mr. Justice White concurred in part and dissented in part. 1
Three Justices dissented: Justices Marshall, Douglas and Brennan. It follows from the mere listing of the alignments of the Justices -of the Supreme Court that Arnett represents less than a unanimous view and, perhaps, should be limited to its particular and unusual facts.
A close reading of Arnett’s concurring and dissenting opinions— more than 90 pages, with extensive footnotes — reveals that the majority sustained the constitutionality of the LloydLaFollette Act. Presumably, that statute sought to accord or to strengthen rights to tenure not previously possessed by nonprobationary Federal employees. The majority, in essence, held that the statute was not so vague as to be rendered constitutionally invalid. It, furthermore, involved consideration of the impact of the First Amendment, if any, upon the LloydLaFollette Act as applied to that discharged employee. The majority held that an employee must be furnished with “ a copy of the charges ” and that he be given a reasonable time for a written answer and supporting affidavits; in fact, 30 days’ *68 advance notice was required. I note further that in Arnett the statute provides for back pay, if reinstated.
Respecting the question of whether the right to a job is a “ property right ”, the majority opinion in Arnett was primarily concerned with constitutional rights, to wit: the First Amendment, the Fourteenth Amendment, and whether or not that statute compofted with such constitutional safeguards. The majority held that it did.
In that connection it should be noted that in my prior opinion, I noted that it is not a question of whether or not the petitioner had a ‘ ‘ constitutional right to continued employment ”, but whether the actions taken by respondents as of the date of the submission were such as to offend ‘1 fundamental judicial sensibilities of minimal due process.” (Merante v. Burns, 79 Misc 2d 93, 96, supra.)
The very langauge of Arnett (416 U. S. 134, 163-164, supra) best sums up the prevailing opinion: “ In sum, we hold that the Lloyd-La Follette Act, in at once conferring upon nonprobationary federal employees the right not to be discharged except for ‘ cause ’ and prescribing the procedural means by which that right was to be protected, did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause beyond that afforded here by the statute and related agency regulations. We also conclude that the post termination hearing procedures provided by the Civil Service Commission and CEO adequately protect those federal employees’ liberty interest, recognized in Roth, supra, in not being wrongfully stigmatized by untrue and unsupported administrative charges. Finally, we hold that the standard of employment protection imposed by Congress in the Lloyd-La Follette Act, is not impermissibly vague or overbroad in its regulation of the .speech of federal employees and therefore unconstitutional on its face. Accordingly, we reverse the decision of the District Court on both grounds on which it granted summary judgment and remand for further proceedings not inconsistent with this opinion.”
Mr. Justice Powell in his concurring opinion, held (p. 171): ‘ ‘ On balance, I would conclude that a prior evidentiary hearing is not required and that the present statute and regulations comport with due process by providing a reasonable accommodation of the competing interests.”
This language, however, is preceded by a consideration of the various safeguards and provisions for evidentiary hearings which were accorded to that employee.
*69 In Justice Marshall’s dissent, joined in by Justices Douglas and Brenuan, he observes that the majority of the Supreme Court are according less protection to depriving one of public employment than is granted to the holder of a driver’s license, citing Bell v. Bur son (402 U. S. 535).
In light of my discussion in my original opinion relating to the inapplicability of the doctrine of exhaustion of remedies, I note the language from the dissenting opinion of Arnett (p. 220), discussing the impact of ‘ ‘ even a temporary loss of wages ’ ’ upon the public employee who is suspended; further, that even if he should ultimately prevail and be accorded back pay this still does not restore him to his former condition.
“ Many workers, particularly those at the bottom of the pay scale, will suffer severe and painful economic dislocations from even a temporary loss of wages. Few public employees earn more than enough to pay their expenses from month to month. See Sampson v. Murray, 415 U. S. 61, 97 (1974) (dissenting opinion). Like many of us, they may be required to meet substantial fixed costs on a regular basis and lack .substantial savings to meet those expenses while not receiving a salary. The loss of income for even a few weeks may well impair their ability to provide the essentials of life — to buy food, meet mortgage or rent payments, or procure medical services. Ricucci v. United States, 192 Ct. Ct. 1, 9-11, 425 F. 2d 1252, 1256-1257 (1970) (Skelton, J., concurring). The plight of a discharged employee may not be far different from that of the welfare recipient in Goldberg who, ‘ pending resolution of a controversy . . . may [be] deprive [d] ... of the very means by which to live while he waits.’ 397 U. S., at 264. Appellee, although earning an annual salary of $16,000 before his dismissal, far above the mean salary for federal employees, was nonetheless driven to the brink of financial ruin while he waited. He had to borrow money to support his family, his debts went unpaid, his family lost the protection of his health insurance and, finally, he was forced to apply for public assistance. App. 128 et seq. In this context justice delayed may well be justice denied.”
The respondents also stress Matter of Wilson (N. Y. L. J., Oct. 1, 1974, p. 17, col. 7, supra), decided by Special Term, Queens County, approximately one month after my determination. Wilson discusses at length and relies primarily upon Arnett. However, it should be noted that in the introductory matter that opinion states that it was ‘ ‘ stipulated at the hearing that all the facts alleged with respect to the employment of the three *70 petitioners were correct, but not the conclusions drawn therefrom.” Consequently, there were no issues of fact to be determined after a hearing. It also appears that in Wilson there was a far more serious question of public concern involved, to wit: the loss of a quantity of the drug methadone, the petitioners were all nurses. Wilson furthermore, makes no reference to the existence of any collective bargaining agreement and whatever rights, if any, inured thereunder to those petitioners.
Respecting the petitioner’s cross motion, I find no basis upon which to cancel and vacate the so-called notice of discipline or to prejudge the manner in which the respondents can reinitiate or revive the disciplinary proceeding. In my opinion, I noted that the State could proceed in accordance with either the collective bargaining agreement and/or the Civil Service Law of the State of New York. If petitioner has not been restored to the payroll— I note the defendants have filed a notice of appeal with a stay, pursuant to CPLR 5519 (subd. [a], par. 1) —he has available remedy in the proper forum.
Accordingly, the motion to reargue is granted and upon such reargument having been had, the court adheres to its prior determination in all respects. The petitioner’s cross motion is also denied. No costs on either motion.